# United States District Court
## Southern District Of Indiana
## Indianapolis Division

FILED

03/07/2022

U.S. DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
Roger A.G. Sharpe, Clerk

Mary Hall,
Plaintiff,

1:22-cv-453-TWP-MG

V.

Cause No.
Complaint - 42 U.S.C. 1983;
14th Amend. Equal Protection;
8th Amend. Excessive Force;
4th Amend. Unreasonable Search;
1st Amend. Free Speech;
14th Amend. Atypical & Significant Hardship;
&
Monell Claims

I.D.O.C. Central Office,
et al., Defendants.

---

## Verified Complaint For Damages And Injunctive Relief

Comes Now, the plaintiff, Mary Hall, I.D.O.C.#160109, pro se, pursuant to 42 U.S.C. 1983; Monell v. Dep't of Soc. Servs. Of City Of New York, 436 U.S. 658 (1978); and the First, Fourth, Eighth, and Fourteenth Amendments of the U.S. Const.; and respectfully files this "Verified Complaint For Damages And Injunctive Relief" ("Complaint"). Attached hereto and incorporated by reference is the "Affidavit In Support of Complaint" ("Affidavit").

-1-

( Section - One. Introduction)

1. Plaintiff Mary Hall is a prisoner confined to the Indiana Department of Corrections (I.D.O.C.), at the New Castle Correctional Facility's Transition Unit ("NCN-TU"), and has filed this complaint, pro se; Challenging his conditions of Confinement; alleging, amongst other Claims, Fourteenth Amend. Equal Protection, Retaliation, and Atypical & Significant Hardship Claims; Stating that procedural protections in place for prisoner's Due-process rights, never Manifested for the plaintiff, totally denying plaintiff his equal protection rights and rendering "the-process-that-was-due" totally unreliable; further Stating that I.D.O.C. Central office has an Official practice of Subjecting prisoners to prolonged Restricted Housing (segregation) after their punitive Restricted Housing time is completed; and though Convoluted, all other Claims stated in this Complaint Stem from the Unmanifested procedural protections and I.D.O.C. Central Office's official practice of the prolonged Restricted Housing of prisoners for "it seems", any reason.

-2-

## Section-Two,
## (Jurisdiction & Venue)

1. The Jurisdiction of this Court is invoked pursuant to the Constitution of the United States, 28 U.S.C. 1343 (3) and (4), and 28 U.S.C. 1331.

2. The Southern District Of Indiana, Indianapolis Division, is an appropriate venue under 28 U.S.C. 1391 (b)(2), because it is the district where the events giving rise to this Claim occurred.

3. Plaintiff's request for injunctive relief is authorized by 28 U.S.C. 2283 and 2284, as well as Rule 65(a) and (b) of the Federal Rules of Civil Procedure.

4. The Court has supplemental jurisdiction over Plaintiff's State Law Claims under 28 U.S.C. 1367

-3-

(Section-Three. Parties)

1. Plaintiff Mary Hall, I.D.O.C.#160109, with his D.O.B. being 3-30-85, is incarcerated at the New Castle Correctional Facility's Transition Unit ("NCN-Tu") located at 1000 Van Nuys Road, New Castle, I.N. 47362.

2. Defendant I.D.O.C. Central Office is responsible for coordinating, managing and/or supervising the I.D.O.C., and the classification of prisoners who have been housed and/or recommended for Department-Wide Restricted Housing status in the I.D.O.C. and prisoners housed at NCN-Tu, located at 302 W. Washington Street, Indianapolis, I.N. 46204-2738. (sued in Official capacity).

3. Defendant Robert E. Carter Jr. is responsible for the supervision of I.D.O.C. Central office, and has power to create, establish, and enforce practices, policies, and procedures, and is located at 302 W. Washington Street, Indianapolis, I.N. 46204-2738. (Sued in Official and individual capacity). (Official capacity for Injunctive Relief).

-4-

4. Defendant Dushan Zatecky was, at all relevent times, the Warden at the Pendleton Correctional Facility/Indiana Reformatory ("P.C.F./I.R."), and responsible for the operation of that facility; prisoner's and staff's well being, health, safety, and discipline; has authority to establish and enforce practices, policies, and procedures; and has to review and approve all emergency transfers from his facility before sending the request to I.D.O.C. Central Office. He is located at 4490 West Reformatory Road, Pendleton, I.N. 49047. (sued in individual capacity)

5. Defendant Charlie Mimmsworth was, at all relevent times, a Nurse at the "P.C.F./I.R." that supervised prisoner's going to, and coming from, the "P.C.F./I.R." medical building. He is located at 4490 West Reformatory Road, Pendleton, I.N. 49047. (Sued in individual capacity).

6. Defendant Nurse Wilson was, at all relevent times, a nurse working at the "P.C.F./I.R." medical building. She is located at 4490 West Reformatory Road, Pendleton, I.N. 49047. (Sued in individual capacity).

7. Defendant (Executive Director) Jack Hendrix is an Executive Director of Classification for I.D.O.C. Central Office, and has authority to review and enforce/overturn Classification decisions in the I.D.O.C. He is located at 302 West Washington Street, Indianapolis, I.N. 46204-2738. (He is sued in his individual Capacity).

8. Defendant (Executive Director) Richard Brown is an Executive Director and "Final Reviewing Authority", for I.D.O.C. Central Office, and I.D.O.C. prisoner's Classification Appeals, and has authority to enforce/ over-turn Classification decisions in the I.D.O.C. He is located at 302 W. Washington Street, Indianapolis, I.N. 46204-2738. (Sued in Individual Capacity).

9. Defendant Mark Sevier is the Warden at the New Castle Correctional Facility and Transition Unit, and is responsible for the operation of "NCN-TU", and has authority to establish and enforce practices, policies, and procedures. He is located at 1000 Van Nuys Road, New Castle, I.N. 47362. (Sued in Official Capacity for Injunctive Relief).

-6-

10. Defendant S. Joseph is "Lead-Investigator" for the Investigations
& Intelligence (I.I.) division of New Castle Correctional Facility,
his duties include the investigation and prevention of
misconduct by facility staff and prisoners. He is located
at 1000 Van Nuys Road, New Castle, I.N. 47362.
(He is Sued in his individual capacity).

11. Defendant R. Blair is a Case-Manager at the New Castle
Correctional Facility, her duties include management of prisoner's
case service plans. She is located at 1000 Van Nuys Road,
New Castle, I.N. 47362. (She is sued in her individual capacity).

12. Defendant G. Cecil is the facility Classification Supervisor,
at all relevent times, at the New Castle Correctional Facility, and
is responsible for the approval of Classification decisions.
He is located at 1000 Van Nuys Road, New Castle, I.N. 47362.
(Sued in individual capacity).

13. Defendant J. French is the Assistant Facility Administrator,
at all relevent times, and is responsible for procedural protections,
Classification decisions, and the Administration of the facility's
operation. She is located at 1000 Van Nuys Road, New Castle,
I.N. 47362. (Sued in individual capacity).

-7-

14. Defendant S. Fitch is the Assistant Facility Administrator at the New Castle Correctional Facility, and is responsible for procedural protections for prisoner's Disciplinary Hearing Board Appeals, He is located at 1000 Van Nuys Road, New Castle, I.N. 47362 (sued in individual capacity).

15. Defendant L. Storms is the Lt. Of the Restricted Housing Unit (RHU) of New Castle Correctional Facility, he is responsible for the supervision and operation of RHU. He is located at 1000 Van Nuys Road, New Castle, I.N. 47362. (sued in individual capacity).

16. Defendant T. Davis is the Sgt. Of the Restricted Housing Unit (RHU) of New Castle Correctional Facility, he super- vises prisoners and of.o.s. in "RHU". He is located at 1000 Van Nuys Road, New Castle, I.N. 47362 (sued in individual capacity).

17. Each defendant Acted under color of State Law.

18. Plaintiff reserves the right to Amend this section.

19. (Amendment) Defendant "The Geo Group" is a private corporation housing prisoners, and managing prison staff and prisoners for the I.D.O.C., located at 1000 Van Nuys Road, New Castle, I.N. 47362 (sued in official capacity).

-8-

# Section-Four
## (Causes Of Action W/ supporting Facts)

### "Recent-History"
Evidence of Central Office' Knowledge Of a substantial Risk to Plaintiff's protected Liberty Interest

1. In 2017 the N.C.C.F., at the behest Of "Lead-Investigator" S. Joseph, subjected the plaintiff Mary Hall to "Restricted-Housing-under-Investigation", with no conduct Violations, On multiple occasions. Finally sending Hall to I.D.O.C. Department Wide Restricted Housing at the P.C.F./I.R. Which is a level-5 (Super-Max) Unit. (Hall was and is supposed to be a level-2). All with no guilty finding of any Conduct violations/wrongdoing. Violating Hall's protected liberty interest and due-process rights.

2. Department-wide status at all facilities is managed and governed by I.D.O.C. Central Office. And Hall filed all Appeals stating the facts cited in paragraph-1. Of this section. (See Exhibits 25-34).

-9-

3. In fact, defendant Jack Hendrix was the final Authority, and upheld this Violation Of Hall's protected Liberty Interest. So, I.D.O.C. Central Office is aware of the facts stated in paragraphs 1 and 2. Of this Section. And these facts are evidence Of a routine practice pursuant to Fed. R. Evid. Rule 406.

4. Due to this factual history, plaintiff's testimony, and Verified Exhibits 25-34, I.D.O.C. Central Office knew Of a Substantial risk to Hall's protected liberty interest, and disregarded this Substantial risk.

5. And more than that, Jack Hendrix himself approved Of violating Hall's Due-process rights and protected liberty interest. (See Exhibit 26). Hall was punished by "Over a Year" in a SuperMax, without any manifested procedural protections and due-process rights. (See Exhibits 28-34).

6. Hall was eventually sent to population (Gen.Pop) at the level-4 I.R./P.C.F. after over a Year in Super-Max.

# "Current Chain Of Events"
## (Fourteenth Amend. Equal Protection & Retaliation)

7. On 3-19-21, the plaintiff Mary Hall was working in the facility's (P.C.F./I.R.), Kitchen, when Ofc. Thornton told Hall that he had a medical pass, and to report to medical. Hall followed these orders.

8. Upon arrival, Ofc. Charley Mimmsworth (defendant-Mimmsworth) became irate with Hall. Hall immediately put his hands up in a "hands-up-don't-shoot" motion, and stated that Ofc. Thornton told him to report there. Defendant Mimmsworth began yelling at Hall saying "Get the fuck out of my area." Causing Nurse Wilson to come out of the Nurse's station and start yelling at the plaintiff also, telling Hall to leave. Hall backed out of the door and building peacefully, and went back to the Kitchen to finish with his daily duties.

9. Shortly after, the custody's "Yard-Crew" Quick Response Team (Q.R.T.) came to the Kitchen and

Ordered Hall to submit to "restraints" (hand-cuffs). Hall complied, and the "Yard-Crew" escorted Hall to the P.C.F./I.R.-D.O. building and secured Hall in a "dry-cell" (cell with no running water). Lt. Earnest told Hall he was being moved from K-dorm to H-cellhouse, because Ofc. Mimmsworth and Nurse Wilson each wrote a conduct-report stating that the plaintiff Morry Hall "aggressively" walked up on them with both of his fists balled up threatening to do them both harm.

10. Hall told Lt. Earnest that this was a blatant lie, and begged Lt. Earnest to check/review the camera footage. Lt. Earnest left, reviewed the camera footage, and then sent the footage and an "e-mail" to his superiors. Upon review of the camera footage, defendant Wilson and Mimmsworth blatantly lied on Hall. So, Lt. Earnest came back to the "dry-cell", apologized to Hall for this atrocious behavior, and let Hall know that he (Earnest) stopped the punitive bed-move, and told Hall to write a grievance. (See Exhibits 20-23). Hall never saw the alleged reports!

-12-

11. Plaintiff wrote Exhibits 20 and 22 on 3-24-21, (as soon as he gained access to blank grievance forms). "Somebody" at the facility held plaintiff's grievances; had the plaintiff transferred to N.C.C.F. (New Castle Corr. Facility) on 4-7-21, (which had to be approved by the Warden (Dushan Zatecky) of P.C.F./I.R., and "through" I.D.O.C. Central Office); and "then" suspiciously, Grievance Specialist Christina Conyers stamped the plaintiff's grievances "Recieved" "a-day-after" Hall was transferred. Hall was transferred back to N.C.C.F. on 4-7-21, the grievance' stamps state "Recieved, Apr. 08-2021."

12. And then Christina Conyers sends Hall 2-return of grievances stating "staff discipline" and "the relief you are seeking is not appropriate to the grievance process."

13. So, Hall was uprooted, his job taken, and transferred back to the same place that violated his rights, "all" so defendants Mimmsworth and Wilson would not have to be held accountable!

14. The plaintiff Marq Hall recieved no procedural protections or remedy.

-13-

"Note: All of the following incidents happened around the same time, some overlapping, and some occurring simultaneously."

15. Mary Hall arrived at the New Castle Corr. Facility on 4-7-21. And on 4-9-21, during the custody day shift at approximately 12:30 p.m., Hall was headed back to his unit after picking up his property, and 2 Sgt.'s approached Hall, telling Hall to "Cuff-up" (submit-to-restraints). Hall complies and asked what he did wrong. The Sgt.'s refused to tell Hall anything, and escorted Hall to the Restricted Housing Unit's 100 Range Shower Cell, securing Hall inside the shower cell.

( Eighth Amend. Excessive Force )

16. Hall told the "RHU" day shift Ofc. on duty that he wanted to speak to a superior Ofc. about why he, (Hall), was being placed in segregation, and that he refused to go into an RHU cell until then, and that he was having suicidal thoughts.

-14-

17. Per I.D.O.C. policy, the plaintiff, Marcy, Hall is allowed to engage the chain of command, and "encouraged" to tell staff if he is having suicidal thoughts. After almost 2-hours, a nurse, J.Green.Rn came and asked Hall if he had suicide plans, and Hall stated that no, he did not have "plans" to kill himself, but he felt he was being targeted and wanted to speak to somebody who could tell him why he was being placed in segregation, because Hall was "tired" of being abused and mistreated. The Nurse left, after telling staff she didn't believe Hall wanted to harm himself.

18. Hall was refused access to the custody chain of command, and left standing in the shower-cell for approximately 5-hours and 30 mins. Custody shift change is between 5:30 p.m. and 6:00 p.m. And approximately between 6:00 p.m. and 7:00 p.m. Sgt. T. Davis came to the front of the cell (shower-cell) and put his hand on his Oleo-resin-Capsicum-spray (Mace), and told Hall " Get the fuck out my shower!"

-15-

19. The Plaintiff raised his hands above his head in a "hands-up-don't-shoot" motion and calmly told Sgt. Davis, "I have been standing in this shower-cell for almost 6-hours asking to speak to a superior officer, because I don't know why I'm here and nobody will tell me, and I'm tired of standing up in here, I don't want to stand up in this shower cell for 6-hours, I just want to know why I'm being placed in seg."

20. Sgt. Davis then began to spray Hall in the <u>face</u>, <u>body</u>, and <u>crotch-area</u>, "literally" drenching the plaintiff! per I.D.O.C. policy, Two: 3-second-bursts are allowed, unless staff or prisoner is at risk of serious harm, or injury. Hall was secured inside a "shower-cell". On the grievance response, (Exhibit-9), denying, (literally), the plaintiff access to the Admin. Remedy, the grievances specialist states "appropriate force was used. You refused orders and threatened self-harm. Grievance Denied."

-16-

21. Hall threatened Self-harm, (Stating Suicidal thoughts), over 5-hours prior to defendant Sgt. T. Davis Spraying the plaintiff. And during that five-hours, Hall was left alone, fully Clothed, for most of that time. All-the-way-Until "after" defendant Sgt. T. Davis arrived at work. (approx. 30-mins. After).

22. So, the force used was punitive! Not to stop Hall from Self-harming. Instead of just Communicating with Hall, and using his training and "de-escalation" tactics in the training policies, he enforced a punitive-practice, maintained by "The Geo Group", of Excessive Force. Defendant T. Davis basically emptied his Can, "Saturating" plaintiff's "head-covering", face, Tee-shirt, (Exhibit-10: Color-photo), and Shorts (Crotch area). According to "The Geo Group", this is "appropriate". (See Exhibit-9). Incident recorded on hand held device (See Exhibit-7)

23. And then, the plaintiff Mary Hall was forceably stripped, under threat of being Sprayed "again", and forced onto "Suicide-Watch" with-out speaking to any mental health professional or superior Ofc. "Still" not knowing why he had been Segregated. Being Sprayed was conviently absent on Conduct Report. See (Ex-7)

-17-

Retaliation
Fourteenth Amend. Equal Protection & Due-process;
First Amend. Free Speech; Fourth Amend. Unreasonable
Search & Seizure

24. Hall arrived back at "RHU" from "Suicide-watch" on 4-12-21, (Suicide-watch from 4-9-21 until 4-12-21.), immediately being placed on "Custody-Strip-cell" for 24-hours.

25. Hall wrote a "request", to RHU-Lt. Storms, asking to use the phone on 4-13-21. On 4-13-21, the plaintiff's "Strip-cell" time would be over. So, Hall followed policy by asking defendant Storms to use the phone on 4-13-21. The "Request" (Ex. 12) was written on 4-12-21, requesting to use the phone at 7:00 p.m. on 4-13-21.

26. Lt. Storms refused Hall phone access on the basis that Hall was on 24-hour strip-cell, even though Hall's Strip-cell would have been over on 4-13-21, when Hall requested to use the phone.

-18-

27. Another prisoner saw Hall's plight, and took pity on Hall, and helped the plaintiff contact his people on the street about how Hall was being treated.

28. So, Lt. Storms refused Hall access to the phone, and the plaintiff had another prisoner use his own (Hall's), phone account to call Hall's support system and assist Hall in his time of need, because Hall's rights were being violated, and had been being violated since the incident at "P.C.F/I.R." a month earlier! Defendant Lt. L. Storms knew this and was attempting to prevent Hall from rallying his support system and family members.

29. And on 4-13-21 defendant L. Storms began "listening" to the plaintiff's phone conversations! Upset that Hall found a way around his machinations, defendant Storms wrote a "Conduct-Violation-Report" (Report of Conduct) (Ex. 13).

30. Hall appealed and exhausted his admin. Remedy concerning defendant Storm's Report, (See Exhibits-18 and 19), and was denied even though Hall did not solicite personal information, "or" abuse the phone. according to the policy codes stated and defined in the "Offender-Orientation-packet" given to him upon his arrival at the facility, i.e. "General phone Operation" sections-6.7.2. and 6.7.1.

31. So, defendant L. Storm denied Hall phone access, became upset that Hall found a way around his First And Fourteenth Amendment violative denials, and then defendant L. Storm violated Hall's Fourth Amendment right against Unreasonable Search & Seizure and used the "fruit of a poisonous tree" to "further" deprive Hall of Quality of life, liberty, and property!

32. And defendant (Lead-Investigator) S. Joseph's duty is to investigate and prevent prisoners "and" Staff misconduct. Yet, he approved of this behavior! (See EX.14). And "artfully" refused to answer the question posed, during the process of collecting witness testimony.

-20-

33. What defendant L. Storms did, is the equivalent of entering the privacy of one's home, without a proper search warrant, and using the illegally obtained evidence to support a conviction.

34. No procedural protections manifested for Marq Hall, therefor no procedural protections or remedies existed. And if this happened to Marq Hall, who else did this happen to? Who else "will" this happen to? All of the Staff involved, treated these multiple-constitutional-violations as if they are a common practice, because they are a common practice.

35. A common practice maintained and encouraged by I.D.O.C. Central Office, The Geo Group, Wardens Dushan Zateck y and Mark Sevier, and I.D.O.C. Comissioner Robert E. Carter Jr.

(Fourteenth Amend. Equal Protection & Due-process)

36. In reference to Hall not knowing why he was placed in segregation, in paragraphs 15. - 23. Of this section of the complaint (Section-Four. Cause of Action...), come-to-find-out Hall was not at N.C.C.F. for 2-whole-days before the Administration Of N.C.C.F. targeted Hall.

37. Admin. Staff - Case Manager R. Blair wrote a fraudulent Report Of Conduct (EX.5, page-2), Class -B : 213 Threatening. Blair was in her Office, with no visual of Hall, or the prisoner Blair alleged that Hall threatened, (Wycuff).

38. Further, there were Staff (an Officer) in the immediate Vicinity of Hall, that never heard Hall threaten anybody! (See EX.5, page-5) "And" the prisoner that Hall allegedly threatened (Wycuff, William I.D.O.C. #117605) wrote a witness statement (EX.5, page-3), stating "I never heard him threaten me", "as far as I'm concerned", "I'm cool with him."

39. Hall engaged and exhausted his Admin. Remedy concerning this fraudulent "Report Of Conduct" (see Exhibits -5, page-1 and EX.6) and even went a step farther, writing a grievance-EX.5, pages-4 and 5. (EX.5, page-5 is the response to page-4). Hall <u>did not have to pursue a grievance</u>, because per I.D.O.C. policy a "Disciplinary Hearing Appeal" is the Administrative Remedy instrument for matters concerning a "Report Of Conduct."

$$\overline{\left(\begin{array}{l}\text{Class of One}\\\text{Fourteenth Amend. Equal Protection, Due-process,}\\\text{And Atypical \& Significant Hardship}\end{array}\right)}$$

40. Defendant S. Fitch reviewed and upheld both, a fraudulent "Report Of Conduct" from defendant L. Storms, and a fraudulent "Report Of Conduct" from defendant R. Blair. And these affirmative acts directly affected the plaintiff's conditions of confinement, showing a trend and common practice of violating the plaintiff's rights with impudence. He is responsible for plaintiff's continued decline of quality of life, liberty, and property.

-23-

41. N.C.C.F.'s Administrative Staff already has an evidential history of violating Hall's Equal protection & Due-process rights and subjecting Hall to Atypical & significant conditions of Confinement. (Please see Exhibits 24-34).

42. The same instrumental-procedural-Staff that violated Hall's rights in 2018, are the same instrumental-procedural-Staff that did it this time too! "N.C.C.F.'s - J. French", and "I.D.O.C. Central Office's - Jack Hendrix". "Defendants" "J. French" and "Jack Hendrix". History/time-line and Exhibits:

   (A. 2018:
        - J. French, Exhibit - 25.
        - Jack Hendrix, Exhibits-26 and 27.

   (B. 2021:
        - J. French, Exhibit - 1.
        - Jack Hendrix, Exhibit - 3.

43. The plaintiff has pursued and exhausted his Admin. Remedy, contesting his Classification and Conditions of Confinement, Citing this factual-Evidential-history. (See Exhibits - 1 and 2).

44. I.D.O.C. Central Office is aware of how the New Castle Correctional Facility's "Transition Unit" is being Staffed and operated.

45. Hall is denied adequate resources and opportunity to Clean his Cell. When Cell-Clean-out <u>is</u> "offered", the Cell doors are Kept secured, so prisoners don't actually "in-fact" get to "Clean-out" the Cells. On top of that, only "2" bottles of watered down chemical is provided for "64" prisoners in "32" Cells. And that, <u>only once-a-week</u>, Causing confrontation between prisoners about "<u>who</u>" will actually "get" Chemicals.

-25-

46. It doesn't stop there. There is only 1-hour of rec and 15 minutes for a shower. And the last few weeks, Hall has recieved 12-hours of rec total. (12-hours, in 3-weeks!) And there is only 7-8 shower stalls, and 16-prisoners-per-rec. line, so that's only "15-mins" for "16-prisoners" to use "7-8" (Seven-to-Eight) Shower Stalls. And when Hall doesn't get rec and shower, he's trapped in his cell with another prisoner (bunkee) 24-hours-a-day! Trapped in a cell, with another prisoner (not of Hall's choosing) (Russian-Roulette-bunkees), that Hall is not even allowed to adequately clean, 24-23 hours. 7-days-a-week! "And" frequent "lock-downs." No-recreation.

47. Hall is denied access to "any" structured religious services. Hall is a Hebrew-Israelite and should be allowed Friday Shabat Service. Hebrew-Israelite is an I.D.O.C. recognized religion, and Friday Shabat service is an I.D.O.C. approved religious service.

-26-

48. So, the only difference between the I.D.O.C. Super-Max-Restrictive-Housing-Department-Wide-Units, and the N.C.C.F.'s "Transition Unit" where Hall is housed/classified, is Hall isn't hand-cuffed and shackled when not secured in his cell, and he's trapped in the cell with a random prisoner 23-hours a day.

49. So, the "nature" of the both of them are the same, which is "forced-inaction." And in General population Hall would be allowed (1. more out-of-cell-time, (2. daily cleaning supply access, (3. structured religious services, (4. 2-hours daily recreation, (5. daily shower access, (6. more substantial employment opportunities, and (7. group cooperation activities.

50. And Hall is not the only prisoner I.D.O.C. Central Office has done this to. I.D.O.C. Central Office has a common practice of sending prisoners to the N.C.C.F.'s "Transition Unit" knowing that prisoners are being subjected to these atypical and significant conditions of confinement.

-27-

51. Hall has been subjected to a class of one claim by being sent to the NCCF-TU "Transition Unit. The Transition Unit was designed for inmates who have been in segregation for an extended time. The island program at NCCF called NCN-TU, is to help inmates transition from restrictive housing to G.P. See Isby-Israd v. Wynn, no U.S. Dist. HNR Hall had just Leveled down from Level 3 to a 2 after over a year in General Population and working in the kitchen at Pendleton Cor. Fac. There was no reason to place Hall in any transition unit after two days a NCCF Hall had already been in General Population and doing well. At most, Hall should have done his seg time for the B conduct for threatening and sent back to General Pop like other inmates housed in seg with him.

52. Like his nieghbor in seg Cantrell Hambright Doc# 233689 who was in seg for an assault and released from seg early and back to General Population at NCCF. An assault is a Class A conduct wich Mr. Hambright was sent to seg for. But Mr. Hall recieved a Threatening conduct and was sent to the transition Unit as if a threat was worse than an assault. A clear violation of Equal Protection has occured here. See Reg v. City of LaCrosse, 585 F.3d 695, (7th Cir. 2010) Under "like circumstances and conditions, people must be treated alike, unless there is a rational reason for treating them differently. Also See Parvis v. Ind Dept of Corr., 2015 U.S Dist, Posey v. Lemman, 2016 U.S. Dist

28

(Section-Five. Administrative Remedy)

1. Plaintiff has exhausted all availde Administrative Remedies, Concerning the Claims contained in this complaint, pursuant to the Prison Litigation Reform Act's Exhaustion Requirement. (Please see Section-4. Causes Of Action W/ Supporting Facts).

(Section-Six. Previous Law-Suits)

1. Plaintiff has never filed other suits in state or federal Court based on the Allegations here-In.

(Section-Seven. Legal Claims)

1. Specific subsections, case-cites, and law quotes are kept to a minum, but do not disclude or waive any intended subsection violations of any standard, Amendment, or law supported by the contents of this complaint.

-29-

2. Policy and/or Practice/"Monell" Claims against defendants
   I.D.O.C. Central Office, Robert E. Carter Jr, The Geo Group,
   and Warden Mark Sevier for maintaining practices
   and/or policies that subject prisoners, classified to
   and housed at the Transition Unit (NCN-TU), to
   Conditions of Confinement that Cause Atypical
   & Significant Hardship Contrary to the Fourteenth
   Amend. Of the U.S. Const.

3. Policy and/or Practice/"Monell" Claims against defendants
   The Geo Group and Warden Mark Sevier, for encouraging
   and maintaining policies and/or practices that encourages
   it's employees, and staff and/or contractors, in the
   Mis-use of Force and/or the Use Of excessive Force,
   Contrary to the Eighth Amend. Of the U.S. Const.

4. The Fourteenth Amendment Equal protection, Due-process,
   and Retaliation Claims against defendants Dushan
   Zatecky, I.D.O.C. Central Office, Charlie Mimmsworth, and
   Nurse Wilson.

5. The Eighth-Amendment Excessive Force Claim against defendant Sgt. T. Davis.

6. The First-Amendment Free Speech, Fourth-Amendment Unreasonable Search & Seizure, and Fourteenth-Amendment Retaliation Claims against defendant Lt. L. Storms.

7. The Fourteenth-Amendment Equal Protection and Retaliation Claims against defendants S. Fitch, R. Blair, S. Joseph.

8. The Fourteenth-Amendment Class of One Equal Protection, Due-Process, and Atypical & Significant Hardship Claims against defendants J. French, G. Cecil, Jack Hendrix, and Richard Brown.

9. The Indiana State Law Claim for indemnification against I.D.O.C., Robert E. Carter Jr., The Geo Group, and Wardens Dushon Zatecky and Mark Sevier, are for any and all future awards and judgments against the defendants, unless otherwise directed by a judicial officer of this Court.

10. Plaintiff reserves the right to Amend this section.

-31-

( Section - Eight. Request For Relief )

Wherefore, plaintiff, Mary Hall, pro se, respectfully requests that this Honorable Court enter Judgment as follows:

A. Granting plaintiff an Injunction and reprieve from these Atypical & Significant Conditions of Confinement;

B. Granting plaintiff compensatory damages to be paid in joint and several by the defendants;

C. Granting plaintiff punitive damages, to be paid in several, against the defendants;

D. Plaintiff seeks a Jury trial on all issues triable by Jury;

E. plaintiff seeks recovery of his costs in this suit, and any other Relief deemed just, proper, and equitable.

Respectfully submitted,

Mary Hall, plaintiff, pro se
I.D.O.C.#160109, 01-209, NCN-TU
1000 Van Nuys Road
New Castle, I.N. 47362

## Verification

I, Marq Hall      , the plaintiff, pro se, do hereby
Verify, by my signature, under penalty of perjury, that
the foregoing representations presented as true, are true
to the best of my knowledge and belief, except as to those
representations based on information, and as to those,
I believe them to be true.

Executed On:
Signature: Q Hall

## Certificate Of Service

I, Marq Hall, the plaintiff, pro se, do hereby certify
that a copy of the foregoing "Verified Complaint....", and
the "Affidavit In Support......" with appended documents
labeled "Exhibits", all-together numbering: -76-      , was
served upon the clerk of the U.S.D.C., S.D., I.D. On
this 24th    day of Febuary, 2022, and shall be
Deemed Filed per the "Indiana Mailbox Rule."